**In re APF INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 90–0615–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 16, 1990.

See also, Bkrtcy., 112 B.R. 446.

David Steen, Tampa, Fla., for debtor.

Thomas McLain, Jr., St. Petersburg, Fla., for Advanced Technology & Research, Inc.

## ORDER ON MOTION TO ASSUME EXECUTORY CONTRACT

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 11 case and the matter under consideration is a Renewed Motion to Assume an Executory Contract, filed by APF Industries, Inc. (Debtor). The executory contract sought to be assumed is a purchase order dated December 11, 1989, entered into between the Debtor and Advanced Technology and Research, Inc. (ATR). (Debtor's Exh. No. 1). The Renewed Motion to Assume was filed on May 11, 1990, and on May 15, 1990, ATR filed an objection to the Motion without stating any reasons for its objection to the assumption of this contract.

The facts relevant to the resolution of the issues as developed at the final evidentiary hearing and as appear from the testimony and exhibits introduced and accepted into evidence are as follows:

At the time relevant, the Debtor, a Florida corporation, was engaged in a metal fabricating and plating business in Pinellas County, Florida. ATR is a subcontractor engaged in certain manufacturing processes actively related to the aircraft industry and apparently had a contract with Textron, which is a subcontractor of Lockheed Aircraft Corporation (Lockheed), who in turn had a contract with the United States of America (Government) for the construction of certain types of aircrafts for the Government. Under the contract sought to be assumed, the Debtor was to undertake the anodizing and etching process on skins submitted by ATR, who in turn would bond the skins which would then be delivered to Textron and ultimately would be attached to the body of the aircraft manufactured by Lockheed. The skins are basically the front end of the wings of the aircraft.

Under the contract, ATR issued a purchase order (Debtor's Exh. No. 1), pursuant to which the Debtor was required to process, that is, anodize and etch, the skin material submitted by ATR pursuant to certain specifications required by the Government. The total contract price for this work was $117,409.00.

It appears that at the time the original purchase order was issued, the Debtor did not have a tank sufficiently large enough to permit the same to be used for the sulphuric acid cleaning process. It is with-

out dispute that ATR agreed to furnish funds to the Debtor to enable the Debtor to acquire a sufficient size tank.

The entire process which was to be performed by the Debtor basically consists of the following steps:

First, the Debtor was to anodize and etch the material submitted by ATR, then it would submit processed samples, also referred to as "coupons" to ATR. ATR, in turn, would test the coupons to see if they met the minimum pressure of tensile strength required by the Government specifications, i.e., minimum pressure of 3,800 pounds per square inch, commonly referred to as "psi". After the processed material is returned by the Debtor to ATR, the skins are bonded and then are delivered to Textron pursuant to the contract ATR had with Textron.

The coupons are submitted in pairs, that is, in each instance one pair is submitted for anodizing and the other for etching and when this process is completed, the two are bonded together. It is without dispute that the first coupons submitted to ATR by the Debtor failed to meet the psi test. The fact of the matter is that the President of the Debtor advised ATR that pursuant to their own investigation, it developed that the previous management instructed the staff to process the coupons on the basis of a specification different from the specifications required by the Government. This communication also reveals that the President of the Debtor informed ATR that the previous certifications of compliance with the specifications concerning the initial submissions of the coupons should not be relied on. (Respondent's Exh. No. 6).

On February 23, 1990, ATR responded and informed the President of the Debtor that the Debtor failed to meet the delivery requirements and failed to satisfactorily furnish the quality of work because they disregarded the specifications required by the Government. The Debtor was also informed by ATR that unless there was an immediate demonstration of interest and ability to meet delivery and quality requirements, ATR would consider the Debtor in default on the purchase contract and would take whatever steps it considered to be appropriate under the circumstances. (Respondent's Exh. No. 7).

In response to this communication, the Debtor informed the President of ATR on February 23, 1990, that they took all steps necessary to rectify the situation and solve the problems, and the Debtor also promised to purchase a specialized tank large enough to enable the Debtor to properly perform the process required by the specifications. (Respondent's Exh. No. 8). Notwithstanding the initial intimation by ATR that the contract was in default, it is without dispute that ATR continued to send coupons and skins for processing to the Debtor who, in fact, actually did complete the process and transmitted the same to ATR.

According to the testing reports prepared by ATR, the lap shear test dated May 8, 1990 indicated that at least two of the coupons out of the four did not meet the minimum requirements of the specifications, nor did the second lap shear test dated June 6, 1990. (Respondent's Exh. Nos. 1 and 2). However, the last lap shear results dated June 19, 1990, indicated that the coupons submitted to ATR by the Debtor in one respect substantially exceeded the minimum requirements of the specifications, and even the other two coupons met the minimum requirements of the specifications.

Notwithstanding the fact that ATR, without interruption, maintained the contractual relationship with the Debtor and sent materials for processing to the Debtor, ATR entered into an agreement with Aerospace Defense Coatings, Inc., a firm located in Orlando, Florida, also known as Orlando Plating, without consulting the Debtor. Under this agreement, ATR granted Orlando Plating the right to complete the balance of the original contract awarded to the Debtor. It appears that Orlando Plating did, in fact, complete the original contract in part. It is without dispute that there is still remaining approximately $60,-000.00 worth of work to be performed on the original contract.

Based on the foregoing facts, it is the Debtor's contention that it is able to meet

the requirements for assumption required by § 365(b)(1)(A), (B) and (C) and, therefore, it should be authorized to assume this executory contract represented by the purchase order dated December 11, 1989.

In opposition, while it is not very well articulated, ATR first takes the position that the Debtor breached its contract, and the contract is terminated and, therefore, there is no contract remaining which is assumable. In the alternative, it is intimated by ATR that the Debtor should not be permitted to assume this contract, even if the contract was not terminated 1) because the Debtor had made no showing to be able to assure future performance and 2) in any event, if the Debtor is permitted to assume the contract, the Debtor must compensate ATR for damages suffered as the result of the Debtor's default under the applicable provisions of the Bankruptcy Code, § 365(b)(2), as a condition precedent to assumption. In this connection ATR contends that it is entitled to be compensated for the following items:

1. The performance by Orlando Plating cost 6% more than the original contract price which was to be paid to the Debtor and, therefore, the Debtor shall pay this excess cost to ATR as a condition precedent to confirmation.

2. That because of ATR's desire to make up lost time, it was compelled to order an expedited process which caused ATR to incur $2,348.20 in overtime charges and approximately $1,141.65 in transportation costs, for a total of approximately $3,500.00.

Basically these are the facts relevant to the ultimate issue which is the Debtor's right to assume the contract under consideration, and if so, under what terms and conditions.

█ Of course, the initial threshold question is whether or not the contract was effectively terminated because of breach by the Debtor. This is so because if it was, there is no contract left for the Debtor to assume. This record leaves no doubt that while this Debtor certainly did not at least initially perform satisfactorily the contract, it is equally true that the Debtor was never informed by ATR that it considered the contract to have been terminated and the contract was never effectively terminated.

On the contrary, notwithstanding these initial failures of the Debtor to perform satisfactorily, ATR continued to send coupons and materials to the Debtor for processing, even after ATR entered into the purchase order with Orlando Plating because, according to ATR, it assumed that it was not permitted by the Bankruptcy Code to terminate this contract. This assumption by ATR is obviously without basis and this Court is satisfied that ATR had absolutely no right to enter into a contract with Orlando Plating while it still maintained its original contractual relationship with the Debtor and continued to lead the Debtor to believe that if the Debtor submitted coupons which would meet the test, it would be permitted to complete and finish its contract.

█ Based on the foregoing, this Court is satisfied that the contract was still an assumable contract. In addition, this Court is satisfied that the Debtor has the ability to assure future performance and since all the damages allegedly suffered by ATR were self-inflicted, ATR is not entitled to any compensation for these damages.

Based on the foregoing the Debtor's Renewed Motion to Assume this contract should be granted and the Debtor should be permitted to perform the balance of the contract with the proviso that it will meet all the requirements of the purchase order and, even if it breaches the same, that it will be deemed to be a breach of an assumed contract, and the damages shall be considered to be a cost of administration of the Chapter 11 estate.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Renewed Motion To Assume Executory Contract filed by the Debtor be, and the same is hereby, granted under the terms and conditions outlined above.

DONE AND ORDERED.